IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| C EVANS CONSULTING LLC, et al., | * | |
| Plaintiffs, | * | |
| v. | * | Civil Action No. GLR-21-2493 |
| SORTINO FINANCIAL, LLC, et al., | * | |
| Defendants. | * | |

***

**MEMORANDUM OPINION**

THIS MATTER is before the Court on Defendant National Life Insurance Company's ("National Life") Motion to Dismiss Second Amended Complaint (ECF No. 97), Defendants Cornerstone Accounting Solutions, Inc. ("Cornerstone") and Lawrence R. Smith's (collectively, "Cornerstone Defendants") Motion to Dismiss (ECF No. 98), and Defendants Sortino Financial, LLC ("Sortino Financial"), Paul Sortino, and James H. Foster's (collectively, "Sortino Defendants") Motion to Dismiss Second Amended Complaint (ECF No. 99). The Motions are ripe for disposition and no hearing is necessary. See Local Rule 105.6 (D.Md. 2023). For the reasons outlined below, the Court will grant the Motions.

# I. BACKGROUND

## A. Factual Background[1]

Plaintiff Cecelia Evans Laray ("Evans") founded C Evans Consulting LLC ("Evans Consulting") in January 2015. (Id. ¶ 12). Evans Consulting provides various services, including federal market advising and leadership coaching. (Id.). Smith and Cornerstone began serving as Evans Consulting's accountants at Evans Consulting's formation. (Id. ¶ 13). Smith and Cornerstone prepared the company's tax returns and occasionally assisted with payroll tax reporting. (Id.). In May 2018, when Evans began considering 401(k) retirement plans for herself and Evans Consulting's employees, Smith recommended she meet with Sortino. (Id. ¶ 18). Evans Consulting and Evans allege that Defendants owed them a fiduciary duty and, notwithstanding that duty, recommended and sold them a retirement plan, known as an Internal Revenue Code 412(e)(3) defined benefit plan (a "412(e)(3) plan"), that was "completely unsuitable and inappropriate for" Plaintiffs. (2d Am. Compl. ["SAC"] ¶ 9, ECF No. 80).

Evans met with Sortino and Foster, who collectively did business as Sortino Financial, along with Smith on May 29, 2018. (Id.). All three Sortino Defendants were agents of National Life. (Id. ¶ 86). Sortino suggested that Evans set up both a 401(k) and a 412(e)(3) defined benefit plan and that the Internal Revenue Service ("IRS") would essentially pay for the 412(e)(3) plan because of its structure and the resulting tax

[1] Unless otherwise noted, the Court takes the following facts from the Second Amended Complaint ("SAC") (ECF No. 80), and accepts them as true. See Erickson v. Pardus, 551 U.S. 89, 94 (2007).

deductions. (Id. ¶ 19). Foster did not dispute Sortino's statements. (Id.). Both Sortino and Foster claimed that the costs of the defined benefit plan could be controlled by excluding nearly all of Evans Consulting's employees from participation in the plan. (Id. ¶¶ 21, 28). Further, Evans could save money by adding her husband to Evans Consulting as an employee and then excluding him from the plan. (Id. ¶ 27). Prior to this meeting, Evans had never heard of a 412(e)(3) plan and she trusted Sortino and Foster's expertise in advising her. (Id. ¶ 21).

Sortino further suggested she could pay for his services for both plans on either a fee basis or a commission structure. (Id. ¶ 20). Sortino advised that most of his clients opted for a commission structure through which fees would be paid "based on his success." (Id.). This statement was false, as Sortino Financial would receive a fee "immediately upon the sale of the annuity and life insurance policy in the defined benefit plan [he was] pitching to Evans Consulting" and its "primary fee would not come from asset performance." (Id.).

National Life produced informational materials suggesting that 412(e)(3) plans were ideal for small businesses with very few (under five) employees. (Id. ¶ 23). Sortino Defendants did not provide Evans with these materials during their meeting, nor did they explain that the 412(e)(3) plan they recommended may be inappropriate for a company like Evans Consulting, which had eight employees and intended to grow quickly to more than twenty-five employees. (See id. ¶ 24). Several other factors also suggested that a 412(e)(3) plan would not be a good fit for Evans Consulting. (Id.). Nevertheless, Sortino and Smith assured Evans that the plan was an appropriate way to reach her goals of providing retirement savings for herself and a few key employees at a low cost. (Id. ¶ 26).

Over the next few months, Evans provided Sortino with extensive materials about Evans Consulting's and her own finances. (Id. ¶¶ 29–31). After she provided these materials, Sortino continued to "extol[] the virtues of" a 412(e)(3) plan. (Id. ¶ 32). He disclosed none of the risks involved with adopting a 412(e)(3) plan or "the substantial fees that he and his firm would earn from the sale of life insurance products necessary to fund the plan." (Id.). Further, Sortino did not include the projected costs of employees joining the plan in the proposals he shared with Evans, thereby breaching his fiduciary duties to accurately market and sell the plan. (Id. ¶ 41). If Evans had been aware of the plan's costs, Evans Consulting would not have implemented the plan. (Id.).

On August 15, 2018, Evans signed the required paperwork to implement the 401(k) and 412(e)(3) plans (collectively, the "Plan") which had an effective date of February 15, 2018. (Id. ¶¶ 42–43). National Life provided the 412(e)(3) plan that Sortino sold Evans Consulting. (Id. ¶ 43). The Plan was initially funded by a life insurance policy purchased on Evans' life with a face value of $2,200,689. (Id.). Sortino Defendants received commissions for the sale of the life insurance policy, plus the right to receive additional revenue from future premiums. (Id.). They knew or should have known that the Plan should be funded by an annuity, not a life insurance policy. (Id.). Further, Sortino incorrectly told Evans that her recently hired employees were not eligible to participate in the Plan until February 15, 2020, when in fact those employees became Plan participants effective on February 15, 2018 and had accrued benefits. (Id. ¶¶ 43–44).

On September 11, 2018, Sortino told Evans that the life insurance policy had been approved and that the first three quarterly payments would be approximately $47,000, with

the first payment due on October 12, 2018. (Id. ¶ 45). One week later, on September 18, 2018, Sortino emailed Evans and informed her that Evans Consulting would need to contribute $194,706 to the Plan for 2018 and approximately $300,000 the following year. (Id. ¶ 46). On December 20, 2018, Sortino advised Evans that she may want to purchase an annuity for the Plan and that it was best to contribute as much as possible by February 14, 2019 "to keep the employee contribution cost as low as possible." (Id. ¶ 47).

In March 2019, Sortino emailed Smith, with Evans copied, to incorrectly state that no employees other than Evans would be eligible to participate in the Plan until February 15, 2020. (Id. ¶ 48). That same month, on Sortino's instructions, "a flexible premium-deferred annuity contract was purchased" for the Plan, with Evans as the annuitant and the Plan as the owner. (Id. ¶ 49). In December 2019, Sortino discussed the Plan with Evans and a senior Evans Consulting employee. (Id. ¶ 50). Sortino disclosed that Evans Consulting would have to pay several hundreds of thousands of dollars to fund policies on Plan participants who would become eligible on February 15, 2020. (Id.). Sortino also said that although "he had not yet excluded anyone from the Plan, he [indicated that he] would go 'back to the drawing board' to attempt to find ways to exclude certain of the participants." (Id.).

Evans was "complete[ly] surprise[d]" by the need to add so many participants and the accompanying cost because Sortino had repeatedly told her "that she would be able to exclude nearly all of Evans Consulting's employees from the [P]lan." (Id. ¶ 53). Contrary to the assurances Evans received from Sortino Defendants, "an additional eleven Evans Consulting employees became eligible to participate in the [P]lan" in February 2019 and

"accrued benefits with a present value of $407,346 according to the Plan valuation as of February 15, 2020." (Id. ¶ 54). Sortino had not planned what would happen with respect to paying the costs of additional employees' insurance once they qualified for the Plan. (See id. ¶ 53).

Evans told Sortino that Evans Consulting could not afford the Plan and "it would need to be closed as expeditiously as possible." (Id. ¶ 50). Sortino assured Evans he would move quickly to close the Plan, but that he could not before February 15, 2020, because "certain employees would have to be added to the Plan for a one-month period." (Id. ¶ 51). Sortino said that the cost to add the participants to the Plan for that brief period would be "nominal." (Id.). The Plan was paused starting March 15, 2020. (Id.).

On March 19, 2020, Sortino Financial emailed Evans to inform her that Evans Consulting must make "a 'small contribution' . . . to cover" the additional employees covered by the Plan. (Id. ¶ 56). But on July 21, 2020, Sortino emailed Evans again to notify her that "the 'numbers came back much higher than we anticipated' with regard to Evans Consulting's required contributions." (Id. ¶ 57). Two days later, Sortino emailed Evans and said that Evans Consulting would have to contribute approximately $691,000 for the employees in the Plan to become fully vested before the company could close the Plan. (Id. ¶ 59). Plaintiffs now "face[] severe IRS penalties and taxes for failing to fund the [P]lan and for taking disallowed deductions in connection with terminating the [P]lan." (Id. ¶ 61). Further, the cost of terminating the Plan is approximately $750,000 and Evans has incurred other damages in loss of retirement savings, professional fees, and attorney's fees. (Id. ¶ 62).

**B. Procedural History**

On July 20, 2021, Plaintiff Evans and C Evans Consulting filed this action in the Circuit Court for Baltimore County, Maryland against Sortino Defendants, National Life, Life Insurance Company of the Southwest, Pentegra Services, Inc. ("Pentegra"), and Cornerstone Defendants. (ECF No. 3). Plaintiffs later filed an Amended Complaint on August 13, 2021. (ECF No. 5). Defendants National Life and Life Insurance Company of the Southwest removed the case to this Court on September 29, 2021. (ECF No. 1). That same day, Evans and Evans Consulting filed an Amended Complaint (ECF No. 5).

On October 20, 2021, Defendants National Life and Life Insurance Company of the Southwest filed a Motion to Dismiss the Amended Complaint (ECF No. 25); Defendant Pentegra filed a Motion to Dismiss (ECF No. 26); and Sortino Defendants filed a Motion to Dismiss (ECF No. 27). On October 29, 2021, Evans and Evans Consulting moved to remand the case to state court. (ECF No. 29).

On May 16, 2022, the Court denied the Motion for Remand and retained jurisdiction, finding that Plaintiffs' claims were "completely preempted" by the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001 et seq. ("ERISA"). (May 16, 2022 Mem. Op. at 15, ECF No. 44). Evans and Evans Consulting subsequently filed a Motion for Leave to File a Second Amended Complaint on June 29, 2022, (ECF No. 54), which the Court granted in part and denied in part on September 15, 2022 (ECF No. 77). The Second Amended Complaint was therefore docketed on September 15, 2022. (ECF No. 80). The Court also denied Defendants' respective Motions to Dismiss the Amended Complaint as moot. (ECF No. 77).

In the Second Amended Complaint ("SAC"), Evans and Evans Consulting allege: negligence against all Defendants (Count I); a declaratory judgment that Defendants are liable to them for costs related to the Plan (Count II); and unjust enrichment against the Sortino Defendants (Count III). (SAC ¶¶ 69–97). In addition to declaratory judgment relief, they seek compensatory damages in excess of $800,000, legal fees, professional costs, and for Defendants to disgorge all fees and commissions earned in relation to the Plan. (Id. ¶ 97). On November 1, 2022, National Life, Cornerstone Defendants, and Sortino Defendants moved to dismiss the SAC. (ECF Nos. 97, 98, 99, respectively). Evans and Evans Consulting filed an omnibus Opposition on December 15, 2022. (ECF No. 102). Cornerstone Defendants, Sortino Defendants, and National Life filed their respective Replies on December 30, 2022, January 13, 2023, and January 19, 2023. (ECF Nos. 107, 111, 113).

## II. DISCUSSION

### A. Standard of Review

The purpose of a Rule 12(b)(6) motion is to "test[] the sufficiency of a complaint," not to "resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." King v. Rubenstein, 825 F.3d 206, 214 (4th Cir. 2016) (quoting Edwards v. City of Goldsboro, 178 F.3d 231, 243 (4th Cir. 1999)). A complaint fails to state a claim if it does not contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed.R.Civ.P. 8(a)(2), or does not "state a claim to relief that is plausible on its face," Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff

pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. Though the plaintiff is not required to forecast evidence to prove the elements of the claim, the complaint must allege sufficient facts to establish each element. Goss v. Bank of Am., N.A., 917 F.Supp.2d 445, 449 (D.Md. 2013) (quoting Walters v. McMahen, 684 F.3d 435, 439 (4th Cir. 2012), aff'd, 546 F.App'x 165 (4th Cir. 2013)).

In considering a Rule 12(b)(6) motion, a court must examine the complaint as a whole, accept the factual allegations in the complaint as true, and construe the factual allegations in the light most favorable to the plaintiff. See Albright v. Oliver, 510 U.S. 266, 268 (1994); Lambeth v. Bd. of Comm'rs of Davidson Cnty., 407 F.3d 266, 268 (4th Cir. 2005). But the court need not accept unsupported or conclusory factual allegations devoid of any reference to actual events, United Black Firefighters v. Hirst, 604 F.2d 844, 847 (4th Cir. 1979), or legal conclusions couched as factual allegations, Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 555).

**B. Analysis**

Defendants argue that the SAC must be dismissed because Plaintiffs' claims are preempted by ERISA, and that if the claims are not preempted, Plaintiffs have failed to state a claim for relief can be granted. (See, e.g., Mem. Supp. Sortino Defs.' Mot. Dismiss ["Sortino Defs.' Mot."] at 6, 9). At bottom, the Court finds that Plaintiffs' claims are preempted and thus it need not address Defendants' second argument.

ERISA is a comprehensive statutory scheme that regulates employee benefit plans. See Aetna Health Inc. v. Davila, 542 U.S. 200, 208 (2004). ERISA's preemption provision is "'broad' and 'expansive.'" Marks v. Watters, 322 F.3d 316, 322 (4th Cir. 2003) (quoting Pilot Life Ins. v. Dedeaux, 481 U.S. 41, 47 (1987)). Section 514(a) of ERISA provides preemption to "any and all State laws insofar as they may now or hereafter relate to any employee benefit plan." 29 U.S.C. § 1144(a). "For ERISA preemption purposes, 'State law' includes both statutory and common law." Custer v. Sweeney, 89 F.3d 1156, 1166 (4th Cir. 1996). In Shaw v. Delta Air Lines, Inc., the Supreme Court held that "[a] law 'relates to' an employee benefit plan, in the normal sense of the phrase, if it has a connection with or reference to such a plan." 463 U.S. 85, 96–97 (1983). The Supreme Court noted that some state claims may not be preempted if they "affect employee benefit plans in too tenuous, remote, or peripheral a manner to warrant a finding that the law 'relates to' the plan." Id. at 100 n.21.

Further, the Fourth Circuit has held that there are three essential elements for finding complete preemption under ERISA:

> (1) the plaintiff must have standing under [29 U.S.C. § 1132(a)] to pursue its claim; (2) its claim must fall[] within the scope of an ERISA provision that [it] can enforce via [§ 1132(a)]; and (3) the claim must not be capable of resolution without an interpretation of the contract governed by federal law, i.e., an ERISA-governed employee benefit plan.

Sonoco Prods. Co. v. Physicians Health Plan, Inc., 338 F.3d 366, 372 (4th Cir. 2003) (internal quotation marks and citations omitted).

Here, Plaintiffs' claims for negligence, unjust enrichment, and declaratory judgment[2] are preempted. As set forth in the Court's May 16, 2022 Memorandum Opinion, Plaintiffs have standing to sue under ERISA. (May 16, 2022 Mem. Op. at 12, ECF No. 44). Next, despite Plaintiffs' assertion that they "do not have an ERISA claim available against the Defendants," (Pls.' Opp'n Defs.' Mot. Dismiss ["Opp'n"] at 6, ECF No. 102), they could bring claims under 29 U.S.C. § 1132. See 29 U.S.C. § 1132(a)(3) (permitting "a participant, beneficiary, or fiduciary" to "obtain other appropriate equitable relief" to "redress [] violations [of] . . . any provision of this subchapter or the terms of the plan"); (SAC ¶¶ 50–61 (describing Defendants' alleged negligence with respect to the sale and administration of the Plan), 95–97 (describing Defendants' alleged unjust enrichment arising from their sale and administration of the Plan)).

Lastly, Plaintiffs' claims are not capable of resolution without an interpretation of the Plan, which is a contract governed by ERISA. See Sonoco, 338 F.3d at 372; see also Quality Air Servs., LLC v. DiPippo, No. JFM-12-3338, 2013 WL 693052, at *1 (D.Md. Feb. 25, 2013) ("[R]esolution of this dispute requires interpretation of the plan's provisions, at least for the purpose of determining the amount of the loss suffered by the plan."). Despite Plaintiffs' contention that their claims do not relate to the administration of the Plan, but rather to the marketing and sale of the Plan before it was implemented, (see

[2] Plaintiffs' declaratory judgment claim is derivative of its state law claims and therefore it is also preempted. See Coppedge v. Blue Cross Blue Shield of S.C., No. 3:21-CV-00625-JMC, 2022 WL 820018, at *3 (D.S.C. Mar. 18, 2022) ("[L]ogically if preemption is appropriate for the substantive state law claims based on satisfaction of the Sonoco requirements, it follows that the same basis for preemption would apply to the claim for declaratory judgment under state law.").

SAC ¶ 77; Opp'n at 6), the SAC still includes allegations regarding the Plan's specific deficiencies and how those deficiencies have caused Plaintiffs substantial monetary harm. (See, e.g., SAC ¶¶ 43, 75 (describing Defendants' failure to ensure proper funding for the plan); id. ¶¶ 44−55 (describing allegedly negligent advice about the Plan's administration and specifically which employees could be properly included or excluded); id. ¶¶ 58−62 (describing specific damages and fees owed because the Plan was not appropriate for Evans Consulting)). There is no way for a court to resolve whether Plaintiffs are correct about the Plan's alleged deficiencies—or whether the Plan's issues were prompted by or resulted in negligence or unjust enrichment—without interpreting the Plan.

Indeed, the Fourth Circuit and this Court have routinely found that unjust enrichment and negligence claims arising from the administration of an ERISA-covered plan "relate[d] to" an ERISA-covered plan for preemption purposes. See Elmore v. Cone Mills Corp., 23 F.3d 855, 863 (4th Cir. 1994) ("Plaintiffs asserted state law claims for unjust enrichment, breach of fiduciary duty, [and] negligence in an attempt to enforce representations made in connection with an ERISA-covered employee benefit plan. [A]ll of these claims clearly 'relate to' an ERISA-covered plan . . . ." (cleaned up)); Cecil v. AAA Mid-Atl., Inc., 118 F.Supp.2d 659, 665–66 (D.Md. 2000) (finding that claims of negligence and unjust enrichment arising from mismanagement in the administration of an ERISA plan were preempted); Essex v. Randall, No. DKC-03-3276, 2005 WL 600335, at *5 (D.Md. Mar. 15, 2005) ("Unjust enrichment claims, like other state common law tort and contract claims, are generally preempted by ERISA."). Additionally, Plaintiffs' claims

fundamentally challenge in part "the administration of the ERISA plan—a core [§ 1132](a) claim." Prince v. Sears Holdings Corp., 848 F.3d 173, 178 (4th Cir. 2017).

Plaintiffs argue that their claims are not preempted because they "are based on Defendants' misrepresentations about the life insurance and annuity funding products marketed and sold by Defendants to fund the Plan, of which was never suitable for Plaintiffs and were contrary to the marketing material of [National Life]." (Opp'n at 3). In other words, Plaintiffs argue that their claims stem from "pre-plan" events and representations, and therefore they do not relate to the Plan itself or its administration. (See id. at 5). In support of this argument, Plaintiffs cite Pizlo v. Bethlehem Steel Corp., 884 F.2d 116 (4th Cir. 1989) and All Risks, LTD. v. Equitable Life Assurance Society of the United States, 931 F.Supp. 409 (D.Md. 1996). (Id. at 4).

First, the Court notes that even according to the Plaintiffs' own careful characterization of their claims, this Court would need to make a finding that the Plan "was never suitable for Plaintiffs" in order to grant the requested relief. (See Opp'n at 3). Such a finding would require a review of the Plan and its terms, and therefore Plaintiffs' claims are preempted. See, e.g., Korman v. MAMSI Life & Health Ins. Co., 121 F.Supp.2d 843, 848 (D.Md. 2000) (finding that state law negligent misrepresentation claim was preempted because "the court would have to engage in a review and analysis of the ERISA plan purchased by [p]laintiff")

Second, Pizlo is distinguishable from the instant case. In Pizlo, plaintiff employees filed suit against their employer alleging breach of contract, promissory estoppel, and negligent misrepresentation claims. 884 F.2d at 117. They alleged that their employer

terminated them prematurely, despite contractual and oral promises for employment for a certain term and that they would not be terminated before they were eligible to receive full pensions under the retirement plan. Id. The Fourth Circuit found that these state law claims were not preempted by ERISA because they "d[id] not bring into question whether Plaintiffs [were] eligible for plan benefits, but whether they were wrongfully terminated from employment after an alleged oral contract of employment for a term." Id. at 120. This is markedly different from the instant case because the Pizlo the state law claims were based on the employment contract and alleged wrongful termination, while the Plaintiffs' claims here require the Court to examine the terms of the Plan and whether it was appropriate for Evans Consulting.

Third, All Risks supports the dismissal of Plaintiffs' claims due to ERISA preemption. See 931 F.Supp. at 413. In All Risks, the employer plaintiff sued its insurer for intentional and negligent misrepresentation, negligence, breach of contract, and unjust enrichment. Id. The plaintiff alleged that defendants misrepresented the requirements for the creation and maintenance of an employee 401(k) profit sharing plan. Id. Importantly, the Court held that negligence and unjust enrichment claims were preempted, but the misrepresentation claims were not because they "function[ed] irrespective of ERISA" and were "based on [] pre-plan conduct." Id. at 417. Here, Plaintiffs do not plead a misrepresentation claim, but rather allege negligence because Defendants recommended and sold the Plan, "which was not suitable for [Plaintiffs]." (SAC ¶ 75). As explained above, this claim necessitates an examination of the Plan's terms and whether the Plan was suitable for Plaintiffs, and thus the state law claims are preempted. Additionally, the Court

notes that All Risks was decided before the Fourth Circuit adopted the more expansive standard for preemption set forth in Sonoco. See Sonoco Prod. Co., 338 F.3d at 372.

Accordingly, because all three Sonoco elements are satisfied, Plaintiffs' state law claims are completely preempted by ERISA and must be dismissed.

## III. CONCLUSION

For the foregoing reasons, the Court will grant Defendants' respective Motions to Dismiss the SAC (ECF Nos. 97, 98, 99). A separate Order follows.

Entered this 8th day of August, 2023.

/s/
George L. Russell, III
United States District Judge